* Application for writ of error pending in Supreme Court.
The Hardin Lumber Company brought this suit against the Houston Belt Terminal Railway Company to recover damages to an automobile owned by plaintiff, alleged to have been occasioned by a collision between said automobile and a locomotive operated by the employés of defendant on its railway track. The collision is alleged to have occurred at the intersection of Rice street and Walker avenue, in the city of Houston, at which place the locomotive was running upon the railway track in a westerly direction on Walker avenue and the automobile, driven by B.R. Hardin, an agent of the plaintiff, was proceeding in a southerly direction on Rice street. It is also alleged that when Hardin first saw the locomotive, he was within about 10 feet of the railway track, and that the locomotive was then about 150 feet distant, and approaching the crossing at the rate of about 25 miles per hour; that Hardin, observing the imminent danger, endeavored to stop the automobile, but, on account of the very short space between himself and the railway track, was unable to do so, and, realizing this, he attempted to hurry across, with the result that the locomotive struck the automobile just in front of the rear wheel on the left side, causing the damages alleged in the petition. Recovery is predicated upon the negligence of the defendant in the following particulars: (1) The locomotive was being run by the servants of defendant at a rate of speed in excess of that allowed by the ordinances of the city of Houston, viz., 6 miles per hour; (2) the locomotive bell was not rung as required by said ordinances; and (3) "that the defendant, by and through its agent, failed to stop the engine, and even failed to stop its speed, when it became cognizant of the perilous position of the plaintiff therein, but wantonly, negligently, and carelessly, and wholly without fault of the plaintiff, proximately caused the collision and consequent damages and injuries to the automobile. * * *" The defendant answered by general *Page 519 
denial and a plea of contributory negligence of plaintiff's agent, the driver of the automobile, to the effect: (1) That he failed to keep a proper lookout before endeavoring to cross the track; (2) that he failed to take any precautions as he attempted to cross the track, though having adequate knowledge of the surroundings and of the danger; and (3) that he negligently and carelessly continued the automobile in motion at a careless and reckless rate of speed after seeing, and being in a position to have seen, the approaching locomotive in time to have stopped and avoided injury. The case was tried before a jury, and resulted in a verdict and judgment for plaintiff for $1,022, from which the defendant has appealed.
The appellant admits, and we find, that the evidence is sufficient to raise the issue of the negligence of the operatives of the locomotive in running the locomotive at a greater speed than allowed by the ordinances of the city of Houston, and also in failing to ring the locomotive bell; and the action of the court in submitting these issues to the jury is not attacked by any assignment of error in this court.
Appellant, by its first assignment of error, complains of the action of the court in refusing to give a special instruction asked by it, peremptorily directing a verdict in its favor. It contends, in this connection, that it conclusively appears from the evidence that the driver of the automobile, plaintiff's agent, was guilty of contributory negligence as a matter of law, barring recovery, in one or more of the respects alleged in the defendant's answer.
Before this court can say that any of the alleged acts of the driver on the occasion in question was contributory negligence as a matter of law, such acts must have been in violation of some law, or that the facts were undisputed and admitted of but one inference regarding the care of the party in doing the acts in question. In other words, to have authorized the court to take the question from the jury, the evidence must have been of such character that there was no room for ordinary minds to differ as to the conclusion to be drawn from it. Lee v. Railway, 89 Tex. 588,36 S.W. 63.
We have carefully examined the evidence in the record bearing upon the question of the contributory negligence of the driver of the automobile in the respects alleged in the defendant's answer, and have concluded, and so find, that the evidence, while sufficient to raise the issue, was not undisputed, but was of such character as to admit of a finding by the jury that the driver was free from contributory negligence in the respects charged in the defendant's answer, and as the jury found against the defendant upon the issue, upon testimony that warranted it, their finding is conclusive upon this court. The assignment and the several propositions thereunder are overruled.
The second assignment complains of the action of the court in submitting the issue of discovered peril, the contention being, in effect, that the evidence adduced upon this issue was not sufficient to take the case to the jury.
Hardin, the driver of the car, testified, in substance, that he was travelling south on Rice street at about the speed of 10 or 12 miles per hour, and that when he reached a point 10 or 12 or possibly 15 feet from the railway track he saw the locomotive, then at a distance of about 150 feet from the crossing, and coming at a rate of speed of about 25 miles per hour; that, realizing the danger of a collision, he put the automobile into reverse and tried to stop, but that, on account of the street being wet and slippery, the wheels slipped and the automobile continued its forward motion; that, seeing he could not stop in time to avert a collision, he put the automobile in forward motion and tried to hurry across, but without success, and the collision resulted. He further testified that there was no slacking of the speed of the locomotive from the time he first saw it until the impact, and that he was watching the locomotive from the time he first saw it until the collision occurred. He further testified:
"They apparently didn't see me at all, * * I sat there listening, and I said, `Ain't he ever going to see me; ain't he ever going to stop?' but he just kept on coming down there, and never did see me."
The evidence sufficiently shows that at the time the locomotive and automobile reached points from which the operator of each could have seen the other, there was nothing to obstruct the view of the engineer, and he testified that he was keeping a lookout on the side of the track from which the automobile was approaching, but that he did not see the automobile until he was within 15 feet of it, and that he then threw the brakes into emergency and used all the means at his command to stop before striking the automobile, but could not stop. He further testified that when he discovered the automobile, he was traveling at a speed of 6 or 8 miles per hour, and that at that rate of speed he could have stopped in the length of his engine. There was other testimony from which the jury might have concluded that the locomotive, if going at the rate of 6 miles per hour, could have been stopped in the space of 8 or 10 feet, and still other testimony that it could have been stopped within 15 or 20 feet. But the locomotive did not, in fact, stop after the collision until it had run 75 feet, according to the testimony of one witness, 100 feet according to the testimony of another, and 150 feet according to the testimony of a third. Two witnesses testified that the automobile was knocked 30 or 40 feet up the track from the crossing. *Page 520 
The Jury was not compelled to credit all the testimony of the engineer or reject it all, but it was within their province to give credence to a part of it and reject the rest. It was within their province, therefore, to say that the engineer spoke the truth when he testified that he was keeping a lookout on the side from which the automobile approached the crossing, and to reject that part of his testimony to the effect that he did not discover the automobile and the danger to it and its occupant until he was within 15 feet of it. There being an absence of obstructions to his vision from the time he might have seen the impending catastrophe had he been in the exercise of proper watchfulness, and the jury having the right to believe that part of his testimony in which he said he was keeping a lookout, it was within their province to say that he did actually discover the automobile and realized the danger at a time when, by the use of the means at hand, he could have stopped and avoided the collision. Again, the jury had the right to say that the statement of Hardin, the driver, that the engineer never did see him was merely conjecture upon his part, arising from the fact that he was in plain view of the locomotive, and that, although the danger was patent, there was no diminution of the speed of the locomotive. Again, the jury might have accepted as true the statement of the engineer that he did not, in fact, discover the automobile until he was within 15 feet of it, and that he was then going at a rate of speed of 6 or 8 miles per hour, and yet have discredited his statement that he used all the means at his command to stop and avoid the collision, in view of the testimony of another witness that a locomotive, moving at that rate of speed, could have been stopped in 8 or 10 feet, thereby avoiding a collision, or in view of the statement of still another witness that it could have been stopped in 15 or 20 feet, thereby reducing the speed of the locomotive so as to have allowed the automobile to safely cross the track ahead of the locomotive by a narrow margin, or, in case of a collision, probably minimizing its effect; it having been shown by the testimony of another witness that the locomotive did not in fact stop until it had run a distance of 75 feet, and by that of another that it ran 100 feet, by another that it ran 150 feet, and by others that the automobile was knocked by the impact a distance of 30 or 40 feet.
From the consideration of the foregoing, we are of the opinion that the court did not err in submitting the issue of discovered peril; and the second assignment and all propositions thereunder are overruled.
The court's charge is not subject to the criticism presented in the third assignment. The charge is correct as far as it went; and, if defendant desired a fuller charge upon the question presented, it should have requested such instruction by a special charge. The assignment cannot be sustained.
We deem the fourth assignment to be without merit, and it is overruled without further comment.
We find no reversible error in the record, and the judgment of the court below is affirmed.
Affirmed.