**MONTGOMERY WARD & CO., Inc., v. LEVY.**

No. 14010.

Court of Civil Appeals of Texas. Fort Worth.

Jan. 19, 1940.

Rehearing Denied Feb. 16, 1940.

C. B. Fullerton and L. E. Oliphant, both of Chicago, Ill., and Gaylord H. Chizum, Dillard Estes, Kenneth H. Wasson, James N. Ludlum, and Chizum, Estes & Ludlum, all of Fort Worth, for appellant.

Max K. Mayer, Milton J. Mehl, and Ernest May, all of Fort Worth, for appellee.

SPEER, Justice.

Appellee, Mrs. E. A. Levy, sued appellant Montgomery Ward & Company, a corporation for damages sustained in an automobile accident. Appellee's husband died subsequent to the accident (from causes not connected with the subject matter of this suit), leaving a will, in which appellee was the sole beneficiary.

In the summer of 1937 appellee and her husband, in preparation for a vacation trip with their family, purchased of appellant a small trailer to be attached to their car, in which to haul certain desired equipment. The trailer had only a single wheel under the center of the frame and body. It was attached to the arms of the car, which extended from the rear end to the bumper, by means of two metal bars extending from the right and left sides of the trailer. These arms curved downward and each had a hinged joint just above the metal clamps which bolted onto the automobile arms. The clamps or fastenings were so constructed as to require three bolts in each; the bolts were to be fastened and held tight by means of nuts screwed on one end and equipped with retaining or lock washers, to prevent the nuts from coming loose and backing off the bolts. It is alleged that the consideration paid for the trailer included the expense of attaching it to the automobile; that appellant's employees did attach the trailer to the car, as it had con-

tracted to do; that appellant warranted the trailer and the manner of its attachment to be adequate and safe for use by appellee and her family, for the purposes and manner intended by them, of which purposes and manner appellant had full knowledge.

It is alleged that when the trailer was attached by appellant, the husband of appellee drove the car to his home, a distance of about two miles, and upon a careful inspection, found that the coupling on the right hand side was loose; that the lock washers were left off of two bolts and the nut was gone from the third on that side; he took the car and trailer back to appellant's place of business to have the coupling made tight; an employee of appellant at the shop where the trailer was attached, inspected the connection and told appellee's husband that it was all right and safe for the uses intended by him. That the next morning they started on their trip and had traveled to a point near Breckenridge, Texas.

The negligence of appellant, which is charged to have been the proximate cause of appellee's injuries, is alleged to be that the coupling connections between the trailer and the car were constructed of defective material, such as cast iron or some other metal inadequate for the purpose, when the car to which it is attached, is driven over the public highways at an average and lawful rate of speed; and further, that a connection bolt on one of the couplings lacked lock washers and a nut, and two other bolts on the same coupling lacked lock washers.

Allegations were made of appellee's severe and permanent injuries, requiring hospitalization and medical attention. She prayed for $10,000 actual and $7,500 exemplary damages.

Appellant answered by general demurrer and many special exceptions. The general demurrer and all special exceptions except one (not material in this appeal) were overruled by the court. There was further answer of general denial; and specially that it was a retail dealer of the trailer in question and not a manufacturer; that it exercised care in the selection of the trailer when it was purchased for sale; that its employees exercised ordinary care in attaching it to the automobile, with all the equipment furnished by the manufacturer for that purpose, placing lock washers and nuts on all bolts, tightening each thoroughly, as they should have been. That appellant nor any of its employees had any knowledge of defects in the construction of the arms or attachments. In the answer were allegations of contributory negligence by appellee's husband, in driving the car with the trailer attached with full knowledge that the trailer arm was loose and improperly fastened (if it was loose and improperly fastened, as claimed by appellee). There were eighteen other alleged acts of contributory negligence set out, but as we view this appeal, they need not be stated.

Trial was to a jury on special issues. The verdict as returned under the issues submitted, was substantially: (1) Appellant failed to equip the couplings of the trailer with sufficient washers and nuts when it was attached to the automobile; (2) such failure was negligence; (3) it was the proximate cause of the overturning of appellee's car; (4) the husband of appellee was not guilty of contributory negligence in operating the car and trailer with knowledge that the couplings of the trailer were not equipped with sufficient lock washers and nuts; (6) the husband was not negligent in operating the car and trailer over a rough and uneven place in the road, in such manner as to cause him to lose control of the automobile; (9) the husband did not attempt to pass a car going in the same direction, in such manner as to cause him to drive the car off the paved surface of the road on to the dirt shoulders on the side; (12) it was not an unavoidable accident; (13) the amount of damages sustained by appellee was $5,000. Immediately following the issue inquiring as to the amount of damages sustained by appellee, the following explanation was given: "In connection with the foregoing issue you are instructed that you will take into consideration only the following: such pain and suffering as you may believe from the evidence plaintiff has sustained and will sustain in the future, if any, and which were proximately caused by the accident in question."

Judgment was ·entered for appellee against appellant for $5,000, and from that judgment this appeal has been perfected.

■ Appellant's first proposition is that the court erred in overruling its special exception to the sufficiency of appellee's allegations of gross negligence as a basis for exemplary damages. The assignment is well taken. The most that can be said of an attempt to allege grounds for exemplary damages, grew out of those allegations wherein it was stated that after Mr. Levy

drove his car and trailer to his home, about two miles away, and discovered that the trailer arm was loose at the fastening, he took it back to appellant's shop, where the employee in charge looked at it and "assured the plaintiff's husband (Mr. Levy) that nothing was wrong, that the trailer would follow the car as true as an arrow, and that Mr. Levy would never have any trouble with that coupling connection. Such acts, done through its managing agent aforesaid, were in reckless disregard of the safety of Mr. Levy and his family, who it was known contemplated making an immediate automobile trip with said trailer attached to their car, and constituted gross negligence."

There was no allegation made which could be said to state any facts, which, if true, showed a total lack of diligence on the part of the agent in the inspection of the coupling. It is alleged that he inspected it and gave his opinion upon its sufficiency. There is nothing to indicate that he really believed otherwise than what he expressed to the owner about the safety of the coupling. The conclusion of the pleader that such acts as were enumerated constituted gross negligence added nothing to the allegation, and was insufficient to constitute a pleading as a basis for a claim of exemplary damages.

Gross negligence is summarized as stated in 30 Tex.Jur., page 654, sect. 10, in this language: "Gross negligence is the want of slight care and diligence. In approved language of the Supreme Court, gross negligence is an entire failure to exercise care, or the exercise of so slight a degree of care as to justify the belief that there was an indifference to the interest and welfare of others. Where the evidence shows that he exercised some care, a finding that he was guilty of gross negligence is not warranted." The allegations in this case were not such as would have warranted the introduction of such testimony as would have shown gross negligence. The rule is fully discussed by our Supreme Court in Texas Pacific Coal & Oil Co. v. Robertson, et al., 125 Tex. 4, 79 S.W.2d 830, 98 A.L.R. 262.

However, unless some other element entered into the case affecting the ruling of the court on the exception, no harm came to appellant, for the reason the questions of gross negligence and exemplary damages were not submitted to the jury. The appellant complains of the

ruling upon the ground that the allegation as made was permitted to be read to the jury, and that the verdict reflects that it influenced the jury in reaching their verdict. Yet no complaint is made that the verdict is excessive. We see nothing in the record to support the contention. Moreover, it is said in 3 Tex.Jur., page 1254, sect. 878: " * * * But the overruling of a special exception may or may not be prejudicial, and the burden of showing prejudice is cast by the rule upon the appellant." Among other cases there cited is Golden v. Odiorne, 112 Tex. 544, 550, 249 S.W. 822. Since the case must be reversed upon other grounds hereinafter to be mentioned, the offending allegation will either be amended or, if not, will be stricken out by the court, there is no necessity for further discussion.

Propositions from two to twelve, both inclusive, and the assignments to which they refer, complain of the ruling of the court in permitting the witness Akey to testify as an expert, in response to a hypothetical question as to what probably caused the accident. In this group of propositions, it is complained that the court declined appellant's motion to strike out the testimony, that the hypothetical question was based upon highly controverted issues, the court abused its discretion in holding that Akey was a competent witness, that his testimony being incompetent, there was no evidence to support the verdict rendered, that it was error to refuse to set aside the verdict rendered on that testimony, that it was error to refuse to enter judgment for appellant on its motion non obstante veredicto, and error was committed in refusing to grant a new trial, when all these questions were presented in a timely motion therefor.

Whether or not the controversy was subject to expert testimony, and whether Akey qualified as an expert, will determine all these questions.

It was the contention of appellee that appellant was negligent in the manner its agents had attached the trailer to the car, that because it was defectively connected, one of the connecting arms worked loose and the play given at the loose side caused the other side to bear the strain incident to its use on the road; that the left arm or coupling was defective and the excessive strain caused it to break, resulting in the wrecking of the automobile in which appellee and her family were riding.

Mr. Dugger testified that late in the afternoon of the day before appellee started on the trip, the right hand coupling was not tight; that he went to the appellant's place of business with Mr. Levy, where it was pointed out to the agent that lock washers and a nut were missing from the coupling, and Levy was assured by the agent that it was all right and safe, and that Levy returned to his home with the trailer attached to his automobile. Appellee testified that they left on their trip the next morning at three o'clock and had driven over the paved roads to a point six miles west of Breckenridge (which from other testimony is about 112 miles), the rate of speed was 35 miles per hour; the road was perfectly smooth and about six o'clock that morning they were driving along at the rate of speed mentioned, she felt in the motion of the car that something had given away—the sensation she felt was similar to that when your car has been hooked onto a bumper of another car, and then you get loose and you feel that motion. Immediately the trailer went over, and as it did, it felt like it raised the car up, and the trailer would frail around; she could see the broken arm of the trailer as it swayed from side to side; she said it was on a pivot; when the trailer would swing one way the car would go the other; her husband was trying to guide the car; she turned off the switch in contemplation of fire; the car left the pavement and went toward a tree on the right of way; the trailer arm swung out to the side and struck the tree and immediately the automobile turned over.

The witness, Akey, testified touching his qualifications substantially as follows: That he was in the employ of a trailer and truck manufacturing company in Fort Worth; he was in charge of the design and construction of trailers; that he worked as a mechanic for the same concern five years and after that time had been superintending the construction of trailers; he was fairly familiar with the type of one wheel trailer involved in this case; that one was used at the shop for about a year; he had attached similar trailers to cars; the connection was made with two arms which are attached to the bumper or some other part, with clamps or bolts. Upon having exhibited to the witness the clamps used in the Levy trailer, he examined them and said that unless each contained three bolts, lock washers and nuts he would not consider that they were securely fastened. The opinion of the witness here expressed is not complained of by appellant.

The trial court had heard enough of the testimony in the case to understand the respective theories of the parties. It is essential to the qualification of a witness who proposes to testify as an expert upon matters involved, that he must show himself to be specially acquainted with the subject matter under immediate inquiry, yet it is not required that he have a complete and definite scientific knowledge of all the intricacies, and minute details which may enter into the point at issue. A general knowledge of the department to which the specialty belongs would seem to be sufficient. United States Fidelity & Guaranty Co. v. Rochester, Tex.Civ.App., 281 S.W. 306, affirmed by the Supreme Court, 115 Tex. 404, 283 S.W. 135. The trial court must determine if the proposed witness has had sufficient opportunity for observation and experience in line with the subject under inquiry to entitle him to give his opinion based upon evidence adduced. When the trial court has determined this matter, it being within his sound discretion, the appellate courts will not disturb his decision unless it appears that he has abused that discretion. 19 Tex. Jur., page 136, sect. 92. We think, as did the trial court, that the witness showed himself competent to testify, and there was no abuse of his discretion in permitting it.

The hypothetical question and answer of the witness are as follows:

"Q. Now, Mr. Akey, assuming that this trailer, the trailer to which these arms were attached, was purchased from Montgomery Ward & Company on August 14th, 1937, attached to a Chevrolet automobile, Chevrolet sedan, 1396 deluxe sedan, on August 15th, 1937, driven during the course of the day with the automobile, with the trailer attached, being driven during the course of that day about, oh, let's say twelve or fifteen miles, at the most. Is that about right? And then driven the next day about 112 miles when, while the trailer was still attached to the automobile, the left arm broke. Now, assuming also that a nut and the lock washer there, and as I recall one other lock washer (I hope you gentlemen correct me if I get my facts wrong) were missing from the right arm, an attachment to the bumper, and one or two lock washers missing from the other

arm, assuming also that the car was being driven on the morning in question at an average rate of speed of approximately thirty-five or thirty-six miles an hour, now, what in your opinion probably caused the breakage of this arm?

"A. Two lock washers missing from the right hand side and one nut missing on that side would in my opinion cause that side to work loose or allow that side to work loose and the bending of the left hand arm which would be rigidly attached to the car, would cause the arm to break by setting up a fatigue in the weaker section."

■■ It is contended by appellant that the matter of whether the loosening of the right hand trailer arm attachment would probably cause the left arm to break was not such a question as would require expert opinions to determine. It appears that the two connecting arms of the trailer extended forward, bending downward and reduced in size to a point immediately next to a hinged joint at the clamps, which were bolted to the arms of the car. The hinged joint was made with small forks in the trailer arms, which had a bolt passed through them to allow for play up and down, but not sidewise. The effect of the testimony of Akey was that if by loosening the union on one side, the connection would cause play back and forth, that side would automatically become shorter or longer while the trailer was in motion and would not permit it to follow the car in a true course, but throw the strain and pressure of the load on the rigid arm, and if the strain was sufficient probably would cause it to break. It is said in 19 Tex. Jur., page 54, sect. 54: "Questions connected with the operation of machinery frequently require elucidation by persons of science and skill and it is not necessary that the machine be complex or unusual in order to make their testimony admissible." In the same text, at sect. 19, it is said: "The testimony of experts may be received wherever peculiar skill and judgment applied to a particular subject are required in order to explain results or trace them to their causes."

■ Again it is contended that the evidence of the expert witness was inadmissible because it was based upon a hypothetical question containing many highly controverted issues, and infringed the functions of the jury. Under the rule of the admission of expert testimony, it cannot be said that the opinion of the witness based upon a proper hypothetical question infringes the duty of the jury. His testimony is, like all other evidence, to be considered in arriving at a proper verdict. In Scalf v. Collin County, 80 Tex. 514, 16 S.W. 314, 315, the Supreme Court said: "When the issue is one upon which the [expert] witness may properly state his opinion, he may do so, notwithstanding his answer embraces the very issue on trial. The conclusion of the witness is then testified to, as any other fact to be considered by the jury, for what they may believe it to be worth. In many cases witnesses may testify to the existence of the very fact to be found by the jury."

■ There were circumstances shown by the testimony which tended to support the hypothetical question put to the witness Akey. It presented appellee's theory of how, under the testimony, the accident happened. Some of the matters included were disputed by other witnesses, and appellant, if it had so desired, could have formulated a question based on its theory that may have elicited a different answer from the witness. It declined to exercise this privilege. Negligence as well as proximate cause may be proven by circumstantial evidence. Houston, E. & W. T. Ry. Co. v. Boone, 105 Tex. 188, 146 S. W. 533; Bock v. Fellman Dry Goods Co., Tex.Com.App., 212 S.W. 635; English v. Miller, Tex.Civ.App., 43 S.W.2d 642. We see no merit in the assignments presented under propositions two to twelve, and they are overruled.

■ Propositions 13, 14 and 15 raise the question of contributory negligence by appellee's husband in operating the automobile with the trailer attached, when he knew of the defective coupling, as contended for by appellee. It is contended by appellant that if the coupling was loose, as claimed by appellee, that the undisputed evidence shows Mr. Levy knew it, and was guilty of contributory negligence in its use, as a matter of law. That the answer of the jury to the contrary had no support in the testimony and the court should have disregarded that answer and entered judgment for the appellant on its motion. We see no error in the rulings of the court in these respects. It was a question about which reasonable minds might differ. Lee v. I. & G. N. Ry. Co., 89 Tex. 583, 36 S.W. 63; Wallace v. Southern Cotton-Oil Co., 91 Tex. 18, 40 S.W. 399. The record in this case reflects that

the jury in its deliberations had much trouble in arriving at an answer to the issue; they originally answered in the affirmative and wrote that answer into their verdict, but subsequently changed their minds and erased that answer and finally returned the verdict with a negative answer.

The trend of decisions in this State is that courts will seldom hold that as a matter of law, facts shown constitute negligence or contributory negligence. The exceptions are mainly those in which a statutory provision is shown to have been violated proximately causing an injury, or be such acts as are contrary to the dictates of common prudence. Temple Electric Light Co. v. Halliburton, Tex.Civ. App., 136 S.W. 584; writ denied 104 Tex. 493, 140 S.W. 426; Gulf, C. & S. F. Ry. Co. v. Gascamp, 69 Tex. 545, 7 S.W. 227. See, also, Beck v. Texas Co., 105 Tex. 303, 148 S.W. 295, and 45 C.J., page 856, sect. 513.

Propositions 16 and 17 and the assignments to which they relate complain of argument made by opposing counsel. The bills of exception and the proposition show that appellant's counsel had argued to the jury, in support of the weight of the testimony and credibility the jury should give to its witnesses, that they were disinterested, whereas those testifying for appellee had an interest in the result of the suit. Appellee's counsel in replying challenged the correctness of appellant's contention and in connection with that argument, said, "Where is the negro boy, who was working with him (Kirby, appellant's employee who attached the trailer)?" Again counsel said, "Where is Sebastian, the man in charge out there?" (Referring to appellant's manager of the shop where the trailer was attached.) The complaint of appellant is based upon the ground that the record does not indicate that these witnesses were within the jurisdiction of the court, or that they were under the control of or available to appellant at the time of the trial.

Relative to the two persons referred to by appellee's counsel, the testimony shows without dispute that Kirby was the mechanic at appellant's shop, who attached the trailer to the automobile; that he had a negro boy assisting him, and that the colored boy attached one arm of the trailer while Kirby attached the other; that Kirby then inspected the work done by the boy. Sebastian, referred to in the argument, is shown to have been the manager of appellant's shop at the time the trailer was attached, and that he was subsequently "transferred", perhaps to Chicago.

The general rule in such cases as this, is, as contended for by appellant, to the effect that comment of opposing counsel on the absence of witnesses is improper, when the person mentioned is as much under the control of one party as the other, or that he is not available, shown either by evidence or by legitimate presumptions. 41 Tex.Jur., page 782, sect. 64. In this case, each of the persons referred to by counsel in the argument is shown to have been in the employ of appellant when the trailer was attached, and it does not appear that they were not so employed by or available to appellant at the time of the trial. In this situation, the rule is as stated in 17 Tex.Jur., page 255, sect. 62: "It is a general rule with wide applications, that where the existence of a status or state of things, a personal relation or a custom is once established, it is presumed that such status, etc., continues until the contrary is shown, or until a different presumption is raised from the subject in question."

It is a well established rule of law in this state that where a party to an action fails to produce evidence which he could have produced, and which was his duty to produce, it will be presumed that if produced, it would have been unfavorable to him, and every intendment will be indulged in favor of the opposite party. The somewhat recent case by our Supreme Court of Marek v. Southern Enterprises, Inc., 128 Tex. 377, 99 S.W.2d 594, 597, definitely supports the above statement. There it was said: "Legitimate inferences from the testimony do not fall in the category of improper argument." The assignments are overruled.

Propositions 18 to 31, both inclusive, and the assignments of error upon which they are based raise the question of misconduct of the jury, and allege errors of the court in refusing to set aside the verdict and in entering judgment thereon. Some of these assignments present reversible error; we shall presently show why we have reached this conclusion.

After the verdict had been returned and received by the court, pending appellant's

motion for new trial, four of the jurors were placed on the stand and questioned concerning what took place during their deliberations. The juror Strangways said the first thing that was done by the jurors after organization was to take a vote as to how they stood on "whether there should be a verdict for the plaintiff or for the defendant." That about three-fourths were in favor of plaintiff recovering from the defendants some amount. That when they reached the issue as to whether or not Mr. Levy was negligent in driving the car, knowing that the trailer was not properly attached, there was a discussion among them as to whether if they answered the question in the affirmative appellee would fail to recover; that some one then said, "Well, boys, now we have voted, and most of us are in favor of giving Mrs. Levy some damages in this case; now if we say Mr. Levy was negligent, maybe that would bar her getting damages." He further said in substance that since none of them knew what effect such an answer would have, they determined to inquire of the court. Whereupon, the foreman sent the following written inquiry to the court: "Can we award damages if we find negligence on both sides?" The court replied that the matter inquired about was no concern of the jury, and instructed them to follow the instructions as given. The juror said they had answered the issue of contributory negligence in the affirmative, but they thereafter erased the answer and inserted a negative answer. Mr. Manning, the foreman, testified that if the answer as to contributory negligence was ever changed from what was written in at first, he did not know it. The original charge was by order of the court sent up on appeal as an exhibit; it clearly shows that something had been erased at the place where the final negative answer appears. No other juror controverted what Mr. Strangways said about the vote to determine if they would render a verdict so that appellee would recover, nor that the inquiry was made of the court as to whether they could assess damages if they found both parties were negligent. Another juror, Mr. Grace, testified that the answer to Special Issue No. 4 was changed after it had been first answered. The foreman testified that if it was changed he didn't remember it.

In 31 Tex.Jur., page 54, sect. 47, it is said: "* * * Thus it is a ground for new trial that they (the jury) agreed in advance as to the party who should prevail and then answered the issues accordingly." Many authorities are there cited, to which we also refer. See also 41 Tex. Jur., page 1211, sect. 345, and cases cited, and Figula v. F. W. & D. C. Ry. Co., Tex.Civ.App., 131 S.W.2d 998, writ refused.

As disclosed by the testimony given by the juror Strangways, the matter of insurance carried by appellants was discussed among the jurors while deliberating upon their verdict. Jurors Manning and Grace said that if it was discussed they didn't hear it. Strangways said that two or three members of the jury talked about it, that some one said: "Well, Montgomery Ward must have insurance, a big firm like that, and they would not have to pay any judgment if we gave one." Also it was said that a moderate judgment would not be appealed, but would be paid, and if the judgment was not too high, that it would be paid off by the insurance company; although that was not discussed as much as the insurance. The juror also stated that he had made up his mind not to award more than $2,500 damages, but that he saw they would be hung up if he did not go higher, "But that the argument of the insurance company was brought up, and that softened me." He then agreed if another question which he thought had been answered wrong was changed to the way he thought it should be, he would vote for a $5,000 verdict. The issue referred to was No. 4, which had been answered to show that Mr. Levy was guilty of contributory negligence. It was then changed to a negative answer and Strangways voted for the larger verdict. Two other jurors said that when matters of hospital and doctor bills were mentioned, the foreman warned them not to discuss those items, but to follow the court's charge. The foreman was not asked if he made such admonition, but said he did not hear either of those matters mentioned in the jury room. These discussions are condemned as misconduct in 31 Tex.Jur., pages 43 and 44, sect. 38.

As bearing upon the points discussed, we are cited by the appellee to the case of Sproles Motor Freight Lines v. Juge, Tex.Civ.App., 123 S.W.2d 919, but in that case the testimony before the trial court concerning alleged misconduct was a controverted issue of fact; the rebuttal

evidence was substantial and the trial court effectually held that the acts complained of did not happen. A writ of error was denied by the Supreme Court, because the judgment was correct. In that case we cited in support of the rule announced, Traders & General Insurance Co. v. Lincecum, 130 Tex. 220, 107 S.W.2d 585. In the instant case the matters complained of were undisputed. No juror said they did not happen. In such circumstances there was no issue of fact for the court to determine on motion for new trial. Here, the misconduct is indisputably shown to have occurred and the presumption of law is indulged that it had a harmful effect. No testimony was offered to rebut that presumption. Appellant's propositions 18 to 23 cover the acts discussed by us, and they are sustained. Propositions 24 to 29 refer to discussions by the jury, while deliberating, questions of hospital and medical bills and attorney's fees; and 30 and 31 complain of comments and opinions given by a juror as to his experience with metal bolts, washers and nuts. There was rebuttal testimony offered by appellee in these respects and the overruling of the motion by the court is a finding that such comments were eliminated from consideration by the jury. The assignments presented by propositions 24 to 31 are overruled.

The trial court should have granted a new trial upon presentation of those points which we have sustained. The judgment is therefore reversed and the cause remanded for another trial.